AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

State Department Federal Credit Union
Account No. xx5354, held in the name of
Lonnell George Glover

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

CASE NUMBER:

I, _____Timothy S. Pak_____ being duly sworn depose and say:

I am a(n)__Special Agent with the Federal Bureau of Investigation (FBI)__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely (describe the property to be seized)

    State Department Federal Credit Union Account No. xx5354,
    held in the name of Lonnell George Glover

which are (state one or more bases for seizure under the United States Code)

    proceeds traceable to a violation of Title 21, U.S.C., Section 846 (an unlawful conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine and one kilogram or more of heroin) and forfeiture pursuant to Title 21, U.S.C., Sections 853 and 881, as well as property involved in a conspiracy to commit money-laundering in violation of 18 U.S.C. 1956, and subject to forfeiture pursuant to 18 U.S.C., Sections 981 & 982.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES  ☐ NO

Barry Wiegand
Asset Forfeiture Unit, Criminal Division
(202) 307-0299

Signature of Affiant
Timothy S. Pak, Special Agent
Federal Bureau of Investigation (FBI)

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR WARRANT
# TO SEIZE BANK ACCOUNT

1.  This affidavit respectfully is submitted in support of an application for a warrant to seize all the funds on deposit in the following bank account:

   1. **State Department Federal Credit Union Account No. xx5354 held in the name of Lonnell George Glover.**

Issuance of a warrant to seize the funds in the above-mentioned account is authorized by 18 U.S.C. §981(b) for property subject to civil forfeiture, and by 21 U.S.C. § 853(f) for property subject to criminal forfeiture.  This affidavit is submitted to set forth the probable cause that the funds in this account are subject both to civil forfeiture and to criminal forfeiture, in the event of conviction.  Because the funds in the subject account easily could be removed from it, a warrant to seize the funds is necessary to ensure that the property is available for forfeiture.

2.  I, TIMOTHY S. PAK, after being duly sworn, do hereby depose, aver, and state as follows:

## I. INTRODUCTION

3.  I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI").  I have been so employed since May 2004.  Currently, I am assigned to the Asset Forfeiture/Money Laundering Squad in the FBI's Washington, D.C., Field Office.  During my career, I have participated in numerous criminal investigations to include money laundering, white-collar fraud, bank robberies, kidnappings, and extortions, and I have participated in the execution of numerous search, arrest, and seizure warrants.  Further, I have received the Department of Justice approved/sponsored Money Laundering and Asset Forfeiture training.  My investigative assignments include money laundering as it relates to the proceeds of unlawful distribution of

ˇ1ˇ

controlled substances as defined in Title 21 of the United States Code, as well as a variety of white-collar criminal investigations. Before becoming a sworn special agent of the FBI, I was an attorney-at-law and a member of the Pennsylvania Bar Association for approximately four years.

4. The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in the investigation described below, knowledge obtained from other individuals including other law enforcement personnel, review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

## II. STATEMENT OF PROBABLE CAUSE

5. Lonnell Glover has been indicted in the U.S. District Court for the District of Columbia on charges making out that he is a large-scale unlawful distributor of such controlled substances as phencyclidine (PCP), heroin, and cocaine in the Washington, D.C., area. For a considerable period, the FBI has been investigating Glover, his drug-trafficking, and activities by his associates in support of such trafficking. The FBI also has investigated what Glover and his associates have done with the illegal proceeds of these drug-trafficking activities. In this investigation, law enforcement agents have learned that Glover has had no known legitimate employment and, before his recent arrest, spent his day arranging illegal drug transactions. This is supported through extensive physical surveillance and electronic monitoring by law enforcement, as well as investigation of government records of Glover's income through reports of his wage and salary earnings from lawful employment.

6.	On Tuesday, June 12, 2007, a grand jury in the U.S. District Court for the District of Columbia handed up an indictment in United States v. Lonnell G. Glover, *et al.*, Cr. No. 07-0153 (ESH), which charged Lonnell Glover, Herbert Young, and others with an unlawful conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine and one kilogram or more of heroin, in violation of Title 21, United States Code, Section 846.  The indictment in United States v. Lonnell G. Glover, *et al.*, Cr. No. 07-0153 (ESH), charged that the conspiracy began in January 2005 and lasted at least through June 5, 2007.  Further, in this indictment, the grand jury alleged that the defendants, jointly and severally, were liable for the forfeiture of the proceeds of this unlawful narcotic-related conspiracy.  The indictment also alleged that defendants' substitute assets were subject to forfeiture if the conspiracy's proceeds had been commingled with other property that could not be subdivided without difficulty, or if the conspiracy's actual physical proceeds could not be located upon the exercise of due diligence.  Such provisions reach funds in bank accounts held in the name of the indicted defendants, who include Lonnell Glover, as well as accounts held in the name of entities that Lonnell Glover controls, such as an entity known as Chances Enterprises.  The grand jury's action constituted a finding of probable cause that Lonnell Glover, Herbert Young, and others have engaged in a sizable narcotic-trafficking conspiracy for at least two years and that Lonnell Glover's assets derived as proceeds of that conspiracy are subject to forfeiture.

7.	In the course of the investigation into this conspiracy, federal law enforcement agents have concluded that Glover regularly has tried to hide and "launder" proceeds from his

illegal narcotics trafficking through a front company known as Chances Enterprises. A check of public databases and property records revealed that Lonnell Glover is the owner of Chances Enterprises. This company is registered to an address in the xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, Washington, D.C. This is address also is that of Glover's mother's home. Physical surveillance of the building that is Glover's mother's home – and Chances Enterprises' corporate address – showed no signs that there is an operating business present at this location. The location itself is in the middle of a residential neighborhood between Bladensburg Road, N.E., and Maryland Avenue, N.E., north of the old Hechinger Mall. In this specific block, all of the buildings are residential, mostly attached row-houses, a few four-unit apartment buildings, and one larger apartment building. There appear to be no commercial enterprises or even corner stores. A query of computerized data bases showed no corporate filings and no UCC filings on behalf of Chances Enterprises since at least January 1, 2006.

      8. From this information, I conclude that Chances Enterprises is a "shell" or "front" company with no actual legitimate business operation or purpose. As set forth below, I have learned that Chances Enterprises maintained two "corporate" bank accounts with the Bank of America ("BOA"). It appeared to me that the true purpose of Chances Enterprises and its BOA accounts is to receive deposits of cash proceeds of Lonnell Glover's narcotic-trafficking conspiracy. Such a drug-trafficking conspiracy normally generates large sums of cash as its proceeds. I infer that Lonnell Glover and his conspirators preferred not to have large sums of cash on hand, as it was at risk of theft, loss, or seizure, and that Glover and his conspirators arranged for these cash proceeds to be deposited into Chances Enterprises' BOA accounts. In

connection with this point, I note that the indictment's forfeiture allegation includes an assertion that about $175,000 in cash had been seized on June 3, 2007, in connection with the investigation into Glover's drug-trafficking activities. But, I am aware that this sum was specifically intended for use in purchase of a large quantity of illegal drugs. This point re-enforces the value of using bank accounts to conceal the origin and use of drug-trafficking proceeds. Consequently, deposits into bank accounts that Glover controlled were been made both for safekeeping the cash to facilitate the drug-trafficking activity and to conceal the existence of its cash proceeds and their source and origin. These activities by Lonnell Glover and his drug-trafficking conspirators constitute a type of money-laundering in violation of 18 U.S.C. § 1956, and a conspiracy to do so is in violation of 18 U.S.C. 1956(h).

9.  Additionally, investigation has shown that Glover owns five pieces of real property in the Washington, D.C., area, which he appears to have been purchased with drug proceeds. The indictment in <u>United States</u> v. <u>Lonnell G. Glover</u>, *et al.*, Cr. No. 07-0153 (ESH), contains a forfeiture allegation against these pieces of real property, asserting that they either are proceeds of the charged conspiracy or were used to facilitate the commission of the drug-trafficking conspiracy crime. In at least one intercepted telephone conversation with an employee of a financial institution, Glover has acknowledged paying the mortgage costs of one or more of these properties by wire transfer. Using drug-trafficking proceeds sent by wire to pay a mortgage against real property constitutes a financial transaction involving the proceeds of a specified unlawful activity for money-laundering, which is a violation of 18 U.S.C. § 1956(a).

10. I further have learned that the Bank of America, a financial institution which undertakes banking operations in the District of Columbia, Maryland, and elsewhere, maintained at least during part of the years 2006 and 2007, two accounts on behalf of the Chances Enterprises, a company owned/controlled by Lonnell Glover. The BOA ten-digit account numbers for these two accounts ended in 4145 and 6541.

11. I have learned that during the week of June 4, 2007, there was in the Chances Enterprises BOA account ending in 4145 a total of more than $85,000. In the Chances Enterprises BOA account ending in 6541 there was a total of about $4000. Regarding the BOA accounts, I been advised that each of these accounts had funds deposited into it at various times during the past 12 months or longer, which were the proceeds of Lonnell Glover's illegal narcotic-trafficking conspiracy.

12. Further, court-authorized monitoring of Glover's cellular telephone showed that Glover instructed trusted co-conspirators and customers of his illegal narcotics business to deposit money into these BOA accounts. As a result of this, in June 2007, upon Lonnell Glover's indictment for participating in an unlawful narcotic-trafficking conspiracy, a judge of the U.S. District Court for the District of Columbia issued a seizure warrant for the funds in these two BOA accounts. In part, this was because evidence showed that Lonnell Glover had no source of lawful income, and all of his income deposited into these two accounts was proceeds of illegal narcotic-trafficking, either directly or indirectly.

13. Since the execution of the seizure warrants on these two BOA accounts, and on certain other accounts associated with defendant Glover, I have learned that the State

Department Federal Credit Union, a financial institution which undertakes banking-type operations in the District of Columbia, Virginia, and elsewhere, has maintained since December 2006 a personal account on behalf of Lonnell Glover.  The State Department Federal Credit Union account number for this account is: xx5354.  Regarding this State Department credit union account, I have learned that it was opened on or about December 11, 2006 (by Glover) by depositing a check in the amount of $2,000.00 drawn from the BOA Chances Enterprises account ending in 6541.  As of June 30, 2007, in Glover's State Department Federal Credit Union account, there was a balance of $2,029.22.  It appears to me that all of the funds in the State Department credit union account either are the result of the original deposit of funds from the Chances Enterprises BOA account or interest payments. Because Lonnell Glover caused a deposit to be made into his State Department credit union account using funds from one of Chances Enterprise's BOA accounts, the funds in the State Department credit union account are subject to seizure as being the proceeds of Glover's indicted narcotic-trafficking conspiracy.

    14. In the course of the FBI investigation into Lonnell Glover's drug-trafficking conspiracy, inquiries were directed to the government agencies in the District of Columbia and Maryland, which are charged with maintaining records of employment earnings by persons working for firms in these jurisdictions.  The information received in answer to these inquiries showed that Lonnell Glover has received little or no income from employment either in Washington, D.C., or Maryland for several years.  Surveillance of Lonnell Glover by law-enforcement officers during the investigation indicates that Lonnell Glover does not have regular, lawful employment.  I have been able to locate no record that shows that Lonnell

Glover has derived any significant income from any source since at least the year 2004 – and very probably much longer – other than from the proceeds of the indicted conspiracy. I, therefore, conclude that funds deposited into Lonnell Glover's two BOA bank accounts were proceeds of the indicted conspiracy, and properties involved in a conspiracy to launder proceeds of the indicted conspiracy, and were thus subject to seizure and, ultimately, forfeiture. Further, by virtue of the fact that Glover's State Department Federal Credit Union bank account was entirely funded by funds, *i.e.*, a check for $2,000.00, directly out of Glover's BOA account ending in 6541, all the funds contained in Glover's State Department Federal Credit Union personal account are also subject to forfeiture for the reasons stated above.

### III. NEXUS BETWEEN PROBABLE CAUSE AND FINANCIAL ACTIVITIES.

15. Based upon my experience, knowledge, and training, I know the following:

A. Individuals who deal in illegal controlled substances generate substantial amounts of currency from the illegal sale of controlled substances. These individuals desire to isolate themselves from the illegal controlled substances in such a fashion that no links can be drawn between drugs, cash, and the principals behind the drugs and cash. The principals attempt to conceal the links so they may continue to operate and generate large profits, which we know are usually in the form of currency, without law enforcement authorities being alerted.

B. Individuals who illegally deal in controlled substances frequently violate federal tax laws either by not filing a federal income tax return, or by not reporting the revenue generated from the illegal activity.

C. Individuals who illegally deal in controlled substances profit from the sale of illegal controlled substances and attempt to legitimize these profits. To accomplish these goals, these individuals utilize false and fictitious bank records, foreign and domestic banks, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate shell corporations, and business fronts.

D.      Individuals who illegally deal in controlled substances often place assets, including accounts at financial institutions, in nominee names for the purpose of concealing and disguising the true owner of the assets.

E.      Individuals who illegally deal in controlled substances must keep on hand large amounts of currency in order to maintain and finance their ongoing drug business.

F.      Individuals who illegally deal in controlled substances and generate substantial amounts of currency wish to conceal the source and amount of their currency, that is, they will attempt to clean/launder it in such a fashion that it appears to be legitimate. In addition, individuals involved in criminal drug activity commonly use safe deposit boxes to hide proceeds of, instrumentalities, and documents associated with their crimes.

G.      Individuals who illegally deal in controlled substances and generate substantial amounts of currency must launder their currency in such a manner as to avoid the filing of Currency Transaction Reports (filed by a financial institution when a transaction exceeds $10,000 in currency) and Forms 8300 (filed by a trade or business when a transaction exceeds $10,000 in currency). Individuals who illegally deal in controlled substances often launder their drug proceeds by structuring, or causing to be structured, financial transactions in an attempt to cause financial institutions and businesses to fail to file the required currency reports.

## CONCLUSION

16.     Based upon the foregoing facts and upon my training and experience in the investigation of illicit narcotics trafficking organizations, I submit that there is probable cause to believe that the funds in the State Department Federal Credit Union bank account are proceeds

of a violation of Title 21, U.S.C., Section 846, an unlawful conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine and one kilogram or more of heroin, in violation of Title 21, United States Code, Section 846.  As a result, all the funds in the State Department Federal Credit Union account are forfeitable, pursuant to 21 United States Code Sections 853 and 881, which provide for the forfeiture of such proceeds through criminal and civil processes.

17.    Further, I respectfully submit that the State Department Federal Credit Union account in Lonnell Glover's name has had deposited into it by Lonnell Glover within the past year the proceeds of the specified unlawful activity of an indicted conspiracy to distribute and possess with intent to distribute controlled substances.  I submit that this was done to conceal that the deposit consisted of drug-trafficking proceeds and that this deposit facilitated the drug-trafficking conspiracy by makings these proceeds more secure and making it less evident that the funds were proceeds of a drug-trafficking conspiracy.  Therefore, the funds in this account are properties involved in an un-indicted money-laundering conspiracy which relates to the indicted drug-trafficking conspiracy.

18.    As a result of the foregoing facts, I submit that there is probable cause to believe that the funds in the State Department Federal Credit Union account are subject to forfeiture and that the funds must be seized to ensure their availability for forfeiture.  Thus, I respectfully request that a seizure warrant be issued authorizing the seizure of the funds in the above described account.

                                                  _____
                                                  Timothy S. Pak
                                                  Special Agent
                                                  Federal Bureau of Investigation

Sworn to and subscribed before me on this_____day of August 2007.

                                                _____
                                                United States Magistrate Judge